# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**VIVIANE CHRISTINE BRANDAO and**<br>**TULIO LIMA,**<br><br>　　　　　**Debtors**<br>_____<br>**VIVIANE BRANDAO,**<br><br>　　　　　**Plaintiff**<br><br>**v.**<br><br>**FEDERAL NATIONAL MORTGAGE**<br>**ASSOCIATION and**<br>**GMAC MORTGAGE, LLC,**<br><br>　　　　　**Defendants** | **Chapter 7**<br>**Case No. 13-15357-FJB**<br><br><br><br>**Adversary Proceeding**<br>**No. 13-1432** |

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO 28 U.S.C. § 157(c)(1)

**I.      Overview**

In the summer of 2012, GMAC Mortgage, LLC ("GMAC") conducted a foreclosure sale of certain real property located at 193 Salem Street in Woburn, Massachusetts (the "Woburn Property") through which GMAC conveyed the Woburn Property to Federal National Mortgage Association ("Fannie Mae"). Fannie Mae still holds title to the Woburn Property.  By her complaint in this adversary proceeding, Viviane Brandao, the plaintiff and chapter 13 debtor, seeks to set aside the foreclosure sale on the basis of alleged wrongful conduct by GMAC in the pre-foreclosure period.  After a trial, the Court now and hereby enters the following proposed findings of fact and proposed conclusions of law pursuant to 28 U.S.C. § 157(c)(1) and proposes that the complaint be dismissed on its merits.

II.     **Procedural History**

On June 14, 2012, GMAC conducted a real estate foreclosure auction sale of the Woburn Property.  GMAC, the highest bidder in the auction, assigned its bid to Fannie Mae and later executed a foreclosure deed conveying the Woburn Property to Fannie Mae.  Brandao continued to occupy the Woburn Property after the foreclosure sale, and Fannie Mae subsequently commenced a summary process action against her in Woburn District Court.

In the summary process action, Brandao asserted that the foreclosure sale was void due to GMAC's failure to comply with the noticing requirements for a foreclosure under Massachusetts law.  Brandao also attempted to assert a counterclaim against GMAC alleging certain bad faith conduct by GMAC in the pre-foreclosure period.  On August 13, 2013, the Woburn District Court granted summary judgment in favor of Fannie Mae, finding that "[t]here was no substantial defect in notice" and that "[e]ven if the notice of right to cure had been defective it would not have invalidated the foreclosure sale."  The court declined to address the merits of Brandao's attempted counterclaim and instead ruled that the issue of bad faith as either a defense or a counterclaim is not available to a defendant in a summary process action.  Accordingly, the Woburn District Court awarded Fannie Mae judgment for possession.  Brandao subsequently filed a notice of appeal of this judgment.  Following a hearing, the Woburn District Court set an appeal bond of $2,200 per month, with the first payment due on September 1, 2013.

On September 9, 2013, Brandao and Tulio Lima filed a petition for relief under chapter 13 of the Bankruptcy Code, commencing the present bankruptcy case. [1]  They did not list the Woburn Property on their schedules, but they did list a claim against GMAC for "fraud and wrongful foreclosure" on their Schedule B.   Neither GMAC nor Fannie Mae filed a proof of claim in the chapter 13 case.  The chapter 13

---

[1] While Tulio Lima is a codebtor in Brandao's chapter 13 bankruptcy case, he was not an obligor on the note underlying GMAC's mortgage, and he does not appear to have ever been an owner of the Woburn Property. Accordingly, he is not a party to this adversary proceeding.

plan eventually confirmed by this Court is silent with respect to both GMAC and Fannie Mae. It does not

seek to cure any arrears on the mortgage, pay any type of secured claim to either defendant, or include

any unsecured liability owed to either defendant in the plan's distribution to unsecured creditors.

Shortly after the filing of the petition, Fannie Mae moved for relief from the automatic stay in

order to file a motion to dismiss Brandao's state court appeal for failure to make the required appeal

bond payments and then to evict Brandao from the Woburn Property in the event her appeal was

dismissed. At a hearing on Fannie Mae's motion for relief from the automatic stay, Brandao's counsel

asserted that Brandao intended to file an adversary proceeding against GMAC and Fannie Mae to bring

claims that had not been resolved in the summary process action. Finding sufficient cause to grant

Fannie Mae's requested relief, the Court allowed the motion for relief from the automatic stay effective

ten days following entry of the order.

The day after the hearing on Fannie Mae's motion for relief from stay, Brandao filed the

complaint commencing the present adversary proceeding, naming both GMAC and Fannie Mae as

defendants. The complaint sought a reversal of the foreclosure sale as well as awards of damages

against both defendants. It listed eight counts: Count I – Breach of the Duty of Good Faith and

Reasonable Diligence, Count II – Violation of MASS. GEN. LAWS ch. 244, §35A, Count III – Violation of

MASS. GEN. LAWS ch. 244, § 1, Count IV – Fraud, Count V – Unfair or Deceptive Acts or Practices under

MASS. GEN. LAWS ch. 93A, Count VI – Turnover of Property of the Estate pursuant to 11 U.S.C. § 542,

Count VII – Quiet Title, and Count VIII – Turnover of Property of the Estate pursuant to 11 U.S.C. § 548.

On the same day she filed the complaint, Brandao filed an emergency motion for a preliminary

injunction enjoining Fannie Mae from evicting her from the Woburn Property or from selling the

Woburn Property to a third party. Following a hearing, the Court denied Brandao's motion for a

preliminary injunction. Brandao subsequently appealed this Court's order denying the motion for a

preliminary injunction to the Bankruptcy Appellate Panel for the First Circuit (the "BAP"), which appeal

the BAP dismissed for lack of jurisdiction on the basis that this Court's order was not a final order and

did not meet any of the requirements for conferring appellate jurisdiction over interlocutory appeals.

Fannie Mae subsequently filed a motion to dismiss the complaint or, in the alternative, for

summary judgment on the basis that the claims and issues raised in the complaint had been or could

have been litigated in the state court summary process action.  Following a hearing, the Court granted

Fannie Mae's motion in part by dismissing Counts II and III of the complaint.  The Court denied the

motion as to the remaining counts, stating that the remaining counts all relied on an allegation of bad

faith in the foreclosure process, an issue that the Woburn District Court had explicitly stated could not

be raised in the summary process action.

On February 27, 2014, GMAC filed a suggestion of bankruptcy indicating that it had filed a

petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for

the Southern District of New York on May 12, 2012, and that this adversary proceeding was stayed to

the extent Brandao was seeking monetary damages from GMAC.

Fannie Mae and GMAC subsequently filed an answer as to the remaining counts.  The answer

contained a counterclaim seeking adequate protection payments to Fannie Mae during the pendency of

the adversary proceeding.  The Court struck the counterclaim for adequate protection payments

without prejudice to Fannie Mae seeking the same relief by a motion filed in the chapter 13 bankruptcy

case.  Fannie Mae later filed an amended answer adding two affirmative defenses.

In August 2014, Fannie Mae filed a motion in the Woburn District Court to dismiss Brandao's

appeal of the judgment for possession, based on Brandao's failure to pay any of the monthly $2,200

appeal bond payments.  Brandao did not appear at a hearing to contest this motion, and on September

25, 2014, her appeal was dismissed.

In the course of discovery, Fannie Mae and GMAC served Brandao with a request for admissions

pursuant to Fed. R. Civ. P. 36.  Brandao failed to respond to this request.  On February 27, 2015, Fannie

Mae and GMAC filed a motion for summary judgment on all remaining counts, relying in part on the

argument that the requests were deemed admitted and that based on those admissions, the defendants

were entitled to judgment as a matter of law.  Fannie Mae also argued that it was entitled to summary

judgment to the extent Brandao sought to obtain damages against it for the alleged wrongful actions of

GMAC.  Finally, Fannie Mae and GMAC again argued that Brandao was precluded from bringing the

remaining claims because they had been or could have been fully litigated in the summary process

action.  Brandao opposed the motion except to the extent Fannie Mae sought summary judgment as to

the request for damages.  Brandao acknowledged that the alleged wrongful conduct giving rise to a

claim for damages was attributable only to GMAC and that she only sought equitable relief with respect

to Fannie Mae.  Following a hearing, the Court granted the motion for summary judgment to the extent

the complaint sought damages against Fannie Mae.  The Court denied the remainder of the motion.  The

Court afforded Brandao an opportunity to file a late response to the request for admissions but awarded

the defendants $1,000 in attorneys' fees, to be paid by Brandao's counsel for the failure to respond the

initial request for admissions.

On October 27, 2015, GMAC filed a status report indicating that the United States Bankruptcy

Court for the Southern District of New York had confirmed GMAC's chapter 11 bankruptcy plan on

December 11, 2013, which plan contained a provision that the claim of any creditor of GMAC that had

failed to file a proof of claim "shall be deemed disallowed, discharged, released, and expunged[.]"

Additionally, the confirmation order enjoined all parties from "commencing or continuing in any manner

or action other proceeding of any kind" relating to claims released in the plan.  As a result of this

confirmation order, Brandao no longer has any right to a recovery against GMAC for the wrongful

conduct alleged in the complaint.

At a hearing subsequent to the filing this status report, Brandao acknowledged that in view of

the Court's ruling on the motion for summary judgment, she could not pursue a claim for damages

against Fannie Mae.  She further acknowledged that in view of the plan provisions in GMAC's chapter 11

bankruptcy, she could not pursue a claim for damages against GMAC.  This left only Brandao's claim for

equitable relief against Fannie Mae in the nature of avoidance of the foreclosure with respect to the

Woburn Property.

 On November 5, 2015, the Court held a one-day trial.  Only Fannie Mae appeared to defend at

the trial as Brandao had conceded that she would not be pursuing a claim for damages against GMAC.

At the beginning of the trial, Brandao's counsel stated that she intended to offer as evidence certain e-

mail communications between Brandao's real estate agent and a GMAC employee.  Counsel for Fannie

Mae responded that Brandao's counsel had not produced the e-mails in discovery.  Brandao's counsel

could not definitively state whether she had produced the e-mails in question during discovery, and she

conceded that she would proceed without introducing the e-mails during the trial.

At the close of Brandao's case, Fannie Mae moved for a judgment on partial findings pursuant to

Fed. R. Civ. P. 52(c) as made applicable by Fed. R. Bankr. P. 7052.  Fannie Mae based its motion, in part,

again on the argument that the claims brought in the complaint had been or could have been litigated in

the state court summary process proceeding.  In support of this argument, Fannie Mae cited a recently

decided Massachusetts Supreme Judicial Court case.  The Court denied the motion, but stated that it

would allow Fannie Mae to address the argument in a post-trial brief.

Following the trial, Brandao filed a motion to reopen the evidence arguing that she had, in fact,

produced the above referenced e-mails to the defendants during discovery.  Brandao argued that but

for Fannie Mae's assertion that the e-mails had not been produced in discovery, her counsel would have

offered the e-mails as evidence during the trial.  Following a hearing, the Court allowed the motion to

reopen the evidence for the limited purpose of allowing Brandao to offer the e-mails as evidence and

allowing Fannie Mae to offer any rebuttal evidence.

The Court subsequently held a second day of trial during which the Court admitted the e-mails into evidence. Following the second day of trial, the parties submitted proposed findings of fact and conclusions of law. Fannie Mae also submitted a memorandum in support of its claim preclusion argument. The Court then took the matter under advisement.

### III.    Jurisdiction and Authority

The claims raised in this proceeding are related to a case under the Bankruptcy Code and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by a standing order of reference (codified in the district court's local rules at L.R. 201, D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). However, the bulk of the claims in this proceeding – all but the turnover count under 11 U.S.C. § 542 and the fraudulent transfer count under 11 U.S.C. § 548 – are not core within the meaning of 28 U.S.C. § 157(b)(1). Accordingly, the bankruptcy court does not have authority to enter final judgment on most of the counts in this matter and instead enters proposed findings and fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). *See* Fed. R. Bankr. P. 9033.

### IV.    Findings of Fact

Brandao is an individual who formerly owned and occupied the Woburn Property. On or about October 30, 2006, Brandao borrowed $364,000 from Reliant Mortgage Company, LLC ("Reliant") and signed a promissory note through which she promised to repay the principal of the loan plus interest at a yearly rate of 6.5% in regular monthly payments over thirty years. On the same day, Brandao granted a mortgage on the Woburn Property securing the promissory note to Reliant's nominee, Mortgage Electronic Registration Systems, Inc. ("MERS"). The mortgage authorized the mortgage holder to exercise a statutory power of sale in the event Brandao defaulted on her obligations under the promissory note and mortgage.

Brandao eventually defaulted on her obligations under the promissory note and mortgage and applied for a loan modification. In or around 2010, Brandao's application for a loan modification was

approved.  Brandao eventually defaulted on her obligations under the modified loan.  On or about

October 17, 2011, MERS assigned the mortgage on the Woburn Property to GMAC.

As some point subsequent to the assignment of the mortgage, GMAC scheduled a foreclosure

sale auction for June 14, 2012 and notified Brandao.  Around this time, Brandao decided to pursue a

short sale of the Woburn Property, and she hired Roland Spadafora, a real estate agent with experience

in conducting short sales.

Spadafora contacted GMAC to seek approval of a short sale.  He also brought in potential buyers

to view the Woburn Property, eventually obtaining an offer to purchase the Woburn Property for

$320,000.[2]  Brandao accepted the offer to purchase on or around May 22, 2012, but because the

amount of the offer was less than the amount she owed to GMAC, Brandao could not go forward with

the sale without GMAC's approval.

On June 8, 2012, Doug Johnson, an employee of GMAC, electronically sent Spadafora a number

of documents to be completed prior to GMAC's approval of a short sale.  Johnson instructed Spadafora

that he would have to upload the required documents to an online platform.  On June 12, 2012,

Spadafora informed Johnson that he was having difficulty uploading the required documents.  He asked

Johnson by e-mail whether the June 14, 2012 foreclosure auction would be postponed.  Johnson

responded with additional instructions and stated, "I can only request a postponement if the package

received is complete and the documents are within our acceptable ages.  I will check the account later

today and see how we are proceeding with document collection."  On June 13, 2012, Spadafora

informed Johnson by e-mail that he was still experiencing difficulty uploading the required documents.

Johnson responded at 11:42 A.M. on June 13, 2012 as follows:

---

[2] No purchase and sale agreement was introduced as evidence at trial.  Nor was any additional information
regarding the terms of the offer presented at trial.  The only information presented about the potential buyers was
that they were a young couple.

[I] have no idea what could be wrong.  However, I reviewed this files [sic] status with my supervisor to see if we have any chance of obtaining a delay to the auction and she pointed out that MA is a judicial state.  Given that to obtain a postponement we would require a court order and for that an appointment for the request to be presented to a judge, we have almost 0% chance of getting a postponement even if we have all the docs.  They usually need a minimum of 7 days to request one.  I would suggest we wait until tomorrow and see if the property goes to auction.  If it does not, then we have a chance to get the rest of the needed items done and seek approval.

On June 14, 2012, GMAC proceeded with the foreclosure auction and thereby foreclosed on Brandao's equity of redemption with respect to the Woburn Property.  GMAC was the highest bidder at the auction with a bid of $310,975.82.  GMAC later assigned its bid to Fannie Mae.  On July 23, 2012, GMAC executed a foreclosure deed that conveyed the Woburn Property to Fannie Mae for consideration of $310,975.82.

**V.      Discussion**

   **A.  Fannie Mae's Claim Preclusion Argument**

Fannie Mae argues that the doctrine of claim preclusion applies to the remaining counts in Brandao's complaint because they are claims that were or could have been adjudicated in the state court summary process action.  Fannie Mae concedes that the Woburn District Court did not make a determination on any bad faith defense or counterclaim on the basis that, under Massachusetts Supreme Judicial Court precedent, the issue of bad faith as either a defense or a counterclaim is not available to a defendant in a summary process action.  *See Wayne Inv. Corp. v. Abbot*, 350 Mass. 775, 775, 215 N.E.2d 795 (Mass. 1966); *New England Mut. Life Ins. Co. v. Wing*, 191 Mass. 192, 196, 77 N.E. 376 (Mass. 1906).  However, Fannie Mae notes that the Massachusetts Supreme Judicial Court has since overruled the precedent relied upon by the Woburn District Court.  Months after the Woburn District Court entered judgment for possession in favor of Fannie Mae, the Massachusetts Supreme Judicial Court clarified that under the current jurisdictional statutes and procedural rules enacted since the 1970s, Massachusetts courts hearing summary process actions *do* have jurisdiction to hear defenses and counterclaims that challenge the title of the post-foreclosure summary process plaintiff, such as claims

based on a lack of good faith in the foreclosure process. *See Bank of America, N.A. v. Rosa*, 466 Mass. 613, 626, 999 N.E. 2d 1080, 1089 (Mass. Dec. 18, 2013). Fannie Mae argues that even incorrect judgments have preclusive effect. Therefore, Fannie Mae asserts that because the bad faith claims could have been determined by the Woburn District Court and Brandao failed to perfect her appeal of the judgment for possession, she should be precluded from bringing those claims in this action.

The full faith and credit statute, 28 U.S.C. § 1738, directs a federal court to apply the preclusion law of the state in which the judgment was rendered. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379-380 (1985). Under Massachusetts law, "[t]he doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Heacock v. Heacock*, 402 Mass. 21, 23, 520 N.E.2d 151, 152–53 (Mass. 1988) (internal citations omitted). Claim preclusion is "based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit." *Id.* at 153 (quoting *Foster v. Evans*, 384 Mass. 687, 696 n. 10, 429 N.E.2d 995 (Mass. 1981)). "Three elements must be present: '(1) identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) a prior final judgment on the merits.'" *In re Brennan*, 275 B.R. 172, 175 (Bankr. D. Mass. 2002) (quoting *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 36 Mass. App. Ct. 286, 390, 631 N.E.2d, 1024 (Mass. App. Ct. 1994)).

Brandao attempted to assert a counterclaim in the summary process action based on GMAC's alleged bad faith conduct prior to the foreclosure. As clarified by the Massachusetts Supreme Judicial Court in *Bank of America, N.A. v. Rosa*, the Woburn District Court did likely have jurisdiction to hear the claims premised on GMAC's bad faith conduct that were later brought in this proceeding, specifically Count I – Breach of the Duty of Good Faith and Reasonable Diligence, Count IV – Fraud, Count V – Unfair

or Deceptive Acts or Practices under MASS. GEN. LAWS ch. 93A, and Count VII – Quiet Title.[3]  However, the

Woburn District Court explicitly declined to reach the merits of any bad faith claim Brandao brought in

that action on the basis that such claims are not available to a defendant in a summary process action.

As such, the judgment for possession was not a judgment on the merits of any claim premised on an

allegation of bad faith by GMAC.

The Woburn District Court effectively excluded any claims premised on an allegation of bad faith

from the scope and reach of its judgment.  Even if under Massachusetts law, the court might have and

should have done otherwise, the court *did not* do otherwise.  It would be the height of unfairness to give

the judgment preclusive effect as to the claims that Brandao attempted to assert where the court ruled

it was jurisdictionally bound *not* to address those claims.  "[C]laim preclusion is grounded upon

considerations of fairness and efficient judicial administration, the doctrine is not applied rigidly where

such interests would not be served."  *Gloucester Marine Rys. Corp.*, 36 Mass. App. Ct at 391.  The

Woburn District Court did not reach the merits of the claims asserted in this action.  Barring Brandao

from bringing these claims now does not serve the interests of fairness.  The doctrine of claim preclusion

does not apply to the remaining counts in this adversary proceeding.

**B.  Count I – Breach of the Duty of Good Faith and Reasonable Diligence**

Brandao argues that GMAC's actions and statements in the weeks leading up to the June 14,

2012 foreclosure auction constitute a violation of GMAC's duty to exercise its power of sale in good faith

and with reasonable diligence as required under Massachusetts law.  Specifically, Brandao argues that

GMAC represented to Brandao that it would postpone the foreclosure if Brandao submitted all

necessary documentation for the approval of a short sale and that on the day before the foreclosure,

---

[3] Counts II and III have already been dismissed on the basis of claim preclusion.  Count VI – Turnover of Property of
the Estate pursuant to 11 U.S.C. § 542 – and Count VIII – Turnover of Property of the Estate pursuant to 11 U.S.C. §
548 – arise under the Bankruptcy Code and could not have been brought in the state court summary process
action.

GMAC falsely told Brandao's real estate agent that it could not stop the foreclosure sale without a court order.  Brandao faults GMAC for not having obtained as a high a sale price at the foreclosure as it might have obtained had it delayed the foreclosure and proceeded with a short sale of the Woburn Property.

The Massachusetts Supreme Judicial Court has articulated the law in Massachusetts governing a mortgagee's responsibility to the mortgagor in the exercise of a power of sale.  "[A] mortgage holder must not only act in strict compliance with its power of sale but must also 'act in good faith and [. . .] use reasonable diligence to protect the interests of the mortgagor,' and this responsibility is 'more exacting' where the mortgage holder becomes the buyer at the foreclosure sale[.]"  *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647 n. 16, 941 N.E.2d 40, 50 (Mass. 2011) (quoting *Williams v. Resolution GGF OY*, 417 Mass. 377, 382–383, 630 N.E.2d 581 (Mass. 1994)) (quoting *Seppala & Aho Constr. Co. v. Petersen*, 373 Mass. 316, 320, 367 N.E.2d 613 (Mass. 1977)).  Importantly, because a mortgagee under Massachusetts law "has 'substantial power' to foreclose on a home and sell it without judicial oversight [. . .] the mortgagee's duty of good faith and reasonable diligence is focused on its conduct of the foreclosure sale." *Figueroa v. Fed. Nat. Mortg. Ass'n*, No. 12-cv-11290-RWZ, 2013 WL 2244348, at *3 (D. Mass. 2013) (quoting *Ibanez*, 941 N.E.2d at 59) (citing Seppala & Aho Constr. Co., 367 N.E.2d at 619).  "Consistent with these requirements, the mortgagee has a duty 'to obtain for the property as large a price as possible.'" *Williams v. Resolution GGF OY*, 417 Mass. 377, 383, 630 N.E.2d 581, 584 (Mass. 1994) (quoting *Clark v. Simmons*, 150 Mass. 357, 359, 23 N.E. 108 (1890)).

In the instant case, Brandao has not met her burden of demonstrating that GMAC failed to act in good faith and use reasonable diligence to protect her interests when it conducted a foreclosure sale of the Woburn Property.  First, the evidence does not support Brandao's assertion that GMAC represented to Brandao that it would postpone the foreclosure sale if she submitted the required documentation for the short sale.  The e-mail communications between GMAC's employee, Doug Johnson, and Brandao's real estate agent, Roland Spadafora, show that GMAC presented postponement of the foreclosure sale

12

merely as a possibility.  Johnson stated that he could *request* a postponement if he received the

required documents.  At no point did he promise that the postponement would occur.  Second, the

evidence is clear that Spadafora never actually submitted all of the required documentation that would

have allowed GMAC to process Brandao's request for a short sale.  Third, while Johnson's

representation that Massachusetts is a judicial foreclosure state and that a court order was necessary to

stop the foreclosure sale was incorrect as a matter of law,[4] this misrepresentation does not, by itself,

rise to the level of a violation of GMAC's duties under Massachusetts law.

GMAC had a duty to obtain as a large a price as possible for the Woburn Property.  Brandao has

not presented sufficient evidence to demonstrate that GMAC did not meet this obligation.  The only

admitted evidence that indicates that the winning $310,975.82 bid may have been low is Brandao's

unrebutted testimony that a potential buyer had offered to pay $320,000.  However, Brandao has failed

to establish that if GMAC had accepted the $320,000 offer, the net proceeds from such a sale would

have exceeded the $310,975.82 obtained in the foreclosure sale.  The $320,000 was a gross offer that

does not account for closing costs and brokers' fees.

Additionally, I have no evidence from which to conclude that the offer was likely to result in a

consummated sale of the Woburn Property or that it was an accurate reflection of the Woburn

Property's fair market value at the time.  Brandao did not provide a purchase and sale agreement at

trial.  Nor did she provide any evidence of the terms of the offer or the identity of the buyers.  Further

she produced neither an appraisal nor a comparative market analysis indicating the sales prices of

comparable properties around the time of the foreclosure.  "A disparity between the foreclosure sales

---

[4] "Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property." *Ibanez*, 941 N.E.2d at 49 (citing Mass. Gen. Laws ch. 183, § 21; Mass. Gen. Laws ch. 244, § 14).  "With the exception of the limited judicial procedure aimed at certifying that the mortgagor is not a beneficiary of the Servicemembers Act, a mortgage holder can foreclose on a property [. . .] by exercise of the statutory power of sale, if such a power is granted by the mortgage itself." *Id.* (citing *Beaton v. Land Court*, 367 Mass. 385, 390–391, 393, 326 N.E.2d 302 (Mass. 1975) *appeal dismissed*, 423 U.S. 806, 96 S.Ct. 16, 46 L.Ed.2d 27 (U.S. 1975)).

price and fair market value is not sufficient of itself to invalidate a foreclosure, but such disparity plus

other circumstances can be." *Edry v. Rhode Island Hospital Trust* (*In re Edry*), 201 B.R. 604, 606 (Bankr.

D. Mass. 1996) (citing *Sher v. South Shore Nat'l Bank*, 360 Mass. 400, 274 N.E.2d 792 (Mass. 1971)).  In

the instant case, Brandao has failed to show any disparity between the foreclosure sales price of the

Woburn Property and the fair market value.

Additionally, Brandao has not produced any evidence of a flaw with the auction process.  Courts

applying Massachusetts law have looked critically upon mortgagee attempts to chill the interest of

potential buyers, especially where the mortgagee is the sole or high bidder at a foreclosure action.  *See,*

*e.g.*, *Union Mkt. Nat. Bank of Watertown v. Derderian*, 318 Mass. 578, 582, 62 N.E.2d 661, 663 (Mass.

1945) (finding that requiring a $500 deposit as a condition of bidding at foreclosure auction may have

had chilling effect on bidding); *Bon v. Graves*, 216 Mass. 440, 103 N.E. 1023 (Mass. 1914) (invalidating a

sale where mortgagee chose to place the required legal notice in a newspaper which had a more limited

circulation than five other local newspapers); *In re Edry*, 201 B.R. at 606 (finding that a conscious

decision to place minimal advertising, not consistent with general practice, violated the duty of good

faith and reasonable diligence even though the advertising complied with the statutory requirements);

*Kavolsky v. Kaufman*, 273 Mass. 418, 173 N.E. 499 (Mass. 1930) (affirming verdict for defendant in

mortgagee's deficiency action because property sold for $2,400 after auctioneer refused to sell to a

$9,000 bidder due to bidder's failure to make a $1,000 deposit rather than the more usual deposit of

$200); *Clark v. Simmons*, 23 N.E. at 108–09 (invalidating $1,200 foreclosure sale where property's value

was at least $1,400 and mortgagee did not give junior mortgagee personal notice of sale despite a

request for such notice).  Brandao has produced no evidence of such chilling attempts by GMAC nor of

any other flaw with the auction process.

Johnson's misstatement of the law in his communication with Spadafora is troubling, but in the

final analysis, it had no effect on the conduct of the sale.  Brandao has not provided even circumstantial

14

evidence of bad faith to supplement this sole error.  Accordingly, I find that Brandao has not

demonstrated that GMAC failed to act in good faith and with reasonable diligence when it conducted a

foreclosure sale of the Woburn Property.  Count I must be dismissed.

### C.  Count IV – Fraud

Brandao asserts that GMAC made a false representation when its employee, Doug Johnson, told

Brandao's real estate agent, Roland Spadafora, that Massachusetts was a judicial foreclosure state and

that GMAC could not stop the foreclosure sale without a court order.  Brandao further asserts that she

reasonably relied on this false representation in not submitting the remaining short sale documents to

GMAC and in not taking action on her own to prevent the foreclosure sale such as by filing a bankruptcy

petition.

In Massachusetts, to recover for the intentional tort of deceit or fraudulent misrepresentation,[5]

a plaintiff "must allege and prove that the defendant made a false representation of a material fact with

knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff

relied upon the representation as true and acted upon it to [her] damage." *Masingill v. EMC Corp.*, 449

Mass. 532, 540, 870 N.E.2d 81, 88 (Mass. 2007) (quoting *Kilroy v. Barron*, 326 Mass. 464, 465, 95 N.E.2d

190 (Mass. 1950) (internal citations omitted)).  Such reliance must be reasonable.  *Id.* (internal citations

omitted).

In the instant case, GMAC's employee told Brandao's real estate agent by email:

> I reviewed this files [sic] status with my supervisor to see if we have any chance of
> obtaining a delay to the auction and she pointed out that MA is a judicial state.  Given
> that to obtain a postponement we would require a court order and for that an
> appointment for the request to be presented to a judge, we have almost 0% chance of
> getting a postponement even if we have all the docs.  They usually need a minimum of 7
> days to request one.

---

[5] For purposes of this memorandum, I will use the terms "deceit" and "fraudulent misrepresentation"
interchangeably as the Massachusetts case law does to describe the same intentional tort.

The representation that GMAC needed a court order to stop the foreclosure sale was false. Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property or to stop a scheduled foreclosure. *See Ibanez*, 941 N.E.2d at 49 (citing Mass. Gen. Laws ch. 183, § 21; Mass. Gen. Laws ch. 244, § 14). However, this does not end the matter. Brandao must still demonstrate knowledge, an intent to induce reliance, actual and reasonable reliance, and damages.

As explained by the United States Court of Appeals for the First Circuit (the "First Circuit"), "there is a lack of clarity in Massachusetts case law" regarding the knowledge element of a deceit claim. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 22 (1st Cir. 2001). "Many Massachusetts cases say that an element of deceit is that the speaker 'made a false representation of a material fact *with knowledge of its falsity*' [. . .] [b]ut other deceit cases say 'plaintiffs need not prove that [defendant] knew his statement to be false' so long as there is proof that the representation was false and susceptible of actual knowledge." *Id.* (internal citations omitted). Explaining that the Massachusetts Supreme Judicial Court had not explicitly addressed this particular question but has referred to the Restatement (Second) of Torts in this area, the First Circuit in the *Cummings* case went on to apply the following test from the Restatement:

> "A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." "Knowledge" for the purpose of showing fraud is established by any of these three conditions.

> *Cummings*, 244 F.3d at 23 (quoting Restatement (Second) of Torts § 526 (1977)).

Unlike the cases that require only that the falsity of a representation be susceptible of actual knowledge, the Restatement test emphasizes that deceit is an intentional tort as it has been categorized in Massachusetts. *See Mohr v. Com.*, 421 Mass. 147, 653 N.E.2d 1104, 1115 n.

16 (Mass. 1995); *G & B Assoc. v. Springfield,* 39 Mass.App.Ct. 51, 653 N.E.2d 203, 205 (Mass.

1995). "[M]ere negligence in discovering the falsity before making the representation is not

sufficient for an action in tort for deceit, but it is enough for an action in negligence." *Cummings,*

244 F.3d at 23 (quoting 37 J. Nolan & L. Sartorio, Massachusetts Practice § 143 at 240–41 (2d ed.

1989)).

The question here is whether Brandao has demonstrated that Johnson, GMAC's

employee, knew his statements were false within the Restatement test at the time he made

them. I find that Brandao has not met this burden. Johnson did not testify at trial. There is no

evidence from which I can infer his knowledge of the falsity of his misstatements other than the

fact that a person exercising a modicum of diligence could have quickly determined those

statements to be incorrect. "The fact that the misrepresentation is one that a man of ordinary

care and intelligence in the maker's situation would have recognized as false is not enough to

impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this

Section, but it is evidence from which his lack of honest belief may be inferred." Restatement

(Second) of Torts § 526 cmt. d (1977). Here, there is simply not sufficient information on the

record from which I can infer that Johnson had the knowledge required by the test set forth

above. It is equally plausible that he mistakenly but honestly believed the truth of the

information he was conveying to Brandao after having consulted his supervisor. Nor do I have

any information from which I can infer knowledge on the part of the Johnson's unnamed

supervisor. Neither Johnson, nor the supervisor, nor any representative of GMAC was called as

a witness. The burden is on Brandao with respect to this element, and I find that she has not

met this burden.

Brandao has also failed to demonstrate that she actually relied on GMAC's false

representation that it could not stop the foreclosure sale without a court order or that such

reliance would have been reasonable.  Had she relied on this representation, she likely would

have consulted an attorney and possibly filed a bankruptcy petition thereby averting the

foreclosure.  I find that Brandao did not rely on GMAC's false representation and that if she had,

such reliance would not have been reasonable.

Finally, Brandao has failed to demonstrate any damage caused by her alleged reliance

on GMAC's false representation.  Brandao does not argue that had the foreclosure not occurred,

she would have been able to become current on the mortgage.  She asserts only that she would

have applied for the short sale for which she had obtained an offer.  The ultimate approval and

consummation of such a short sale is speculative at best.  Brandao has not demonstrated that

she had gathered all the required documents to have enabled GMAC to review her short sale

application.  Additionally, as noted above, she has provided no evidence from which I can infer

that the $320,000 offer would have resulted in a consummated sale, such as a signed purchase

and sale agreement, the proposed terms of the offer, or the identity of the potential buyers.

Additionally, Brandao does not argue that she could have cured the mortgage arrears in

bankruptcy and retained the property had she filed a petition.  Even if she had filed for

bankruptcy, Brandao's intention was to obtain approval of a short sale for a price more than the

$310,975.82 winning bid.  As discussed, she has produced no evidence from which I can infer

that such a scenario was possible and not merely speculative.  Accordingly, Brandao has not

demonstrated that she was harmed by her reliance on GMAC's misrepresentation.

As Brandao has not met her burden of proving the required elements of a claim for

deceit or fraudulent misrepresentation under Massachusetts law, Count IV must be dismissed.

### D.   Count V – Unfair or Deceptive Acts or Practices under Mass. Gen. Laws ch. 93A

Brandao argues that the same pre-foreclosure behavior by GMAC upon which she based her

fraud count constitutes an unfair or deceptive act or practice in violation of Mass. Gen. Laws ch. 93A.  In

order to recover under Chapter 93A based on her claim of fraudulent misrepresentation Brandao must

prove reasonable reliance. *Rodi v. S. New England Sch. of Law*, 532 F.3d 11, 19 (1st Cir. 2008) (citing

*Trifiro v. N.Y. Life Ins. Co.,* 845 F.2d 30, 33 n. 1 (1st Cir.1988)); *see also Mass. Laborers' Health & Welfare*

*Fund v. Philip Morris, Inc.*, 62 F.Supp.2d 236, 243 (D. Mass. 1999) (holding plaintiff could not recover

under Chapter 93A for claim based on fraud where plaintiff failed to prove reliance on false statements

was reasonable).  She must also prove damages.  *See* MASS. GEN. LAWS ch. 93A, § 9.  As discussed above,

she has proven neither.  Accordingly, Count V must be dismissed

### E.    Count VI – Turnover of Property of the Estate pursuant to 11 U.S.C. § 542

Brandao asserts that the foreclosure was void as a result of GMAC's bad faith conduct and that

title to the Woburn Property "never properly vested [in] GMAC or Fannie Mae."  Accordingly, Brandao

asserts that she had either a legal or equitable interest in the Woburn Property as of the date she filed

her bankruptcy petition making it property of the bankruptcy estate and subject to the turnover

requirement of 11 U.S.C. § 542.

"The commencement of a case [. . .] creates an estate[.]"  11 U.S.C. § 541(a).  Such estate

includes, "all legal or equitable interests of the debtor in property as of the commencement of the

case."  11 U.S.C. § 541(a)(1).  The obligation of turnover in § 542(a) applies only to property of the

bankruptcy estate.  *Lassman v. Sergio* (*In re Sergio*), 552 B.R. 9, 23 (Bankr. D. Mass. 2016) (citing *In re*

*Belankova*, 2014 WL 1203131, at *17 (Bankr. D. Mass 2014)).  Brandao transferred her legal interest in

the Woburn Property when she initially granted the mortgage that was later assigned to GMAC.  *See*

*Bevilacqua v. Rodriguez*, 460 Mass. 762, 774, 955 N.E. 2d. 884 (Mass. 2011) ("In Massachusetts, a

mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable

title, which the mortgagor retains[.]")  At the time Brandao granted a mortgage in the Woburn Property,

she retained an equity of redemption, *i.e.*, the right to redeem legal title from the mortgage holder upon

payment in full.  Brandao's equity of redemption was terminated by the June 14, 2012 foreclosure sale.

I have found no basis for setting aside the foreclosure sale, nor have I found a basis for concluding that she retained any equitable interest in the Woburn Property. Accordingly, as of the petition date, Brandao held neither a legal nor an equitable interest in the Woburn Property. The Woburn Property is not and has never been property of Brandao's bankruptcy estate. As the obligation of turnover in § 542(a) only applies to property of the bankruptcy estate, Brandao's request for turnover must be denied, and Count VI must be dismissed.

### F. Count VII – Quiet Title

Brandao asserts a quiet title claim regarding the Woburn Property, arguing that the Court should set aside the foreclosure sale and vest title in Brandao. To maintain a quiet title action in Massachusetts, a plaintiff must have both actual possession of and legal title to the property. *Ayer v. U.S. Bank, N.A.*, No. 12-cv-10981-NMG, 2012 WL 5361480, at *2 (D. Mass. 2012) (citing *Daley v. Daley*, 300 Mass. 17, 14 N.E.2d 113, 116 (Mass. 1938)). Brandao does not have actual possession of the Woburn Property, and legal title is not in her name. More importantly, she has advanced no reason why Fannie Mae's title should be undone. Accordingly, Count VII must be dismissed.

### G. Count VIII – Turnover of Property of the Estate pursuant to 11 U.S.C. § 548[6]

Brandao asserts that the foreclosure sale is avoidable under 11 U.S.C. § 548 as a transfer at a time when Brandao was insolvent for which Brandao received less than reasonably equivalent value. While Brandao does not refer to a specific subsection of § 548, she does acknowledge that she needs to demonstrate at a minimum that the amount obtained for the Woburn Property was less than "a reasonably equivalent value" as that term is used in 11 U.S.C. § 548(a)(1)(B)(i). As a basis for this argument, Brandao contends that the winning bid at the foreclosure auction of $310,975.82 was less than the value of the Woburn Property as demonstrated by the $320,000 short sale offer.

---

[6] With her label for Count VIII, Brandao appears to blur the concepts of turnover under 11 U.S.C. § 542 and avoidance of fraudulent transfers under 11 U.S.C. § 548. Brandao's filings in support of this count make clear that this count seeks avoidance of a fraudulent transfer under § 548, and I will treat it as such.

Case 13-01432   Doc 122   Filed 04/07/17   Entered 04/07/17 16:24:09   Desc Main
Document   Page 21 of 21


The United States Supreme Court has held that the price received at a mortgage foreclosure sale that complies with state law is deemed as a matter of law to be "reasonably equivalent value" for the foreclosed property for purposes of 11 U.S.C. § 548.  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 1765 (1994).  This rule applies even though the forced nature of the foreclosure sale will often result in a sale price well below a fair market price between a willing buyer and willing seller.  *In re Smith,* 811 F.3d 228, 234 (7th Cir. 2016), *cert. denied sub nom*. *Smith v. SIPI, LLC*, 137 S. Ct. 103, 196 L. Ed. 2d 40 (2016).  As discussed above, GMAC conducted its foreclosure sale in compliance with Massachusetts law.  Accordingly, Brandao's argument fails as a matter of law.

Even if I were to reach the issue of reasonably equivalent value as a factual matter, Brandao has not shown any meaningful difference between the amount GMAC actually received for the Woburn Property and the amount it might have received had it delayed the foreclosure sale.  The sole measure of value asserted by Brandao is the $320,000 short sale offer.  The difference between the gross amount of this offer and the actual foreclosure sale price was $9,024.18, hardly enough to take the amount received out of the range of reasonable equivalence.  In any event, the true point of comparison should be the amount of the net proceeds of the proposed short sale, an amount less than the foreclosure sale price after accounting for closing costs and brokers' fees.  Thus, even under a factual analysis, Brandao has not established that the transfer was for less than a reasonably equivalent value.

For the above reasons, Count VIII must be dismissed.

**VI.    Conclusion**

The Court hereby enters the above proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1) and proposes that the complaint in this adversary proceeding be dismissed on its merits.

Date:  April 7, 2017

_____
Frank J. Bailey
United States Bankruptcy Judge

21